Next case is Argentum Medical et al. versus Noble Biomaterials et al., 2015, 10-57. We'll hear from Mr. Cronin, who has the benefit, if it is a benefit, of having no opponent arguing. Good morning, Your Honor. May it please the Court, my name is Thomas Cronin, and I represent appellants and counter-defendants Thomas Miller and Greg Silver. And I am here today on a very narrow issue, and that is whether or not the District Court abused its discretion in denying our motion to vacate a portion of the February 2011 judgment that held Mr. Silver and Mr. Miller with punitive damages in the amounts of $1 million and $1.2 million, respectfully. I think a very brief procedural history is relevant here, because what I'm going to try to establish to show that abuse of discretion did occur is that the motion should have been granted because of the exceptional circumstances in this case. And what occurred, first of all, the judgment was in February 2011, holding, you know, imposing these punitive sanctions for findings of unfair competition and product disparagement. Shortly thereafter, Argentum filed bankruptcy, went into bankruptcy in the Northern District of Illinois, and that's case number 11-25515, and that's the support for the position that Mr. Silver and Mr. Miller lost all control of their equity in the company as a result of that, as a result of that bankruptcy filing. Shortly thereafter that, Argentum, Miller, and Silver filed a malpractice action, also in the Northern District of Illinois, and that was case number 11-CV8594. The substance of the malpractice action was that the trial counsel in the underlying case in the Middle District, in the underlying patent case, trial counsel had negligently waived Mr. Miller's and Mr. Silver's advice of counsel defense. Specifically, that when there was evidence that Mr. Miller and Mr. Silver had accused Noble of product infringement, both in the marketplace and in the courthouse. But it's well established in law that one is bound by the actions of one's counsel. That's certainly true, Your Honor, but Rule 60b-5, we submit, provides an opportunity and I'm quoting the statute that says, a court may relieve a party from a final judgment when, subsection 5, that judgment has been satisfied, released, or discharged, or applying it is no longer equitable. And that's what we're here for, Your Honor, is Rule 60b-5's motion that applying it here would not be equitable and it has been released or discharged. Now, the district court denied Mr. Miller and Silver's motion because it held that to grant it would undermine the legal process and to grant it would undermine the public's interest in the integrity of the jury verdict. We respectfully submit that that's an abuse of discretion. The case on which the district court relied is a Western District of Virginia case, Evans versus Williams. And in Evans, what occurred there was, it was a 1983 action in which an arrestee filed a lawsuit against police officers. They tried the case on three days in January, 2001, and the jury came back with a verdict in favor of the plaintiff holding the police officers responsible for... And then the day following the judgment, right after, the parties came back to court and said, you know what, we've settled. We've settled. Please vacate the jury verdict. Please vacate the finding against the police officers because they'll lose their jobs. You know, and the judge there, I think, quite properly said, a jury verdict is not an advisory opinion. The parties are not owners of a judgment. And in this situation, the Evans court declined to vacate the judgment. Evans is not our case, most respectfully. This is not Evans. Well, there was a jury trial in this case. There certainly was a jury trial. And we don't know what would have happened if the advice of counsel of defense had been asserted. That's absolutely right. It's one of these situations, Your Honor, where Mr. Miller and Mr. Silver find themselves facing, you know, million-dollar punitive damage awards, which have been satisfied and paid. So we've certainly got that leg of it. What they're coming back to the court for is saying, now, at this point, vacate the judgment, most respectfully, because it's no longer equitable. And in evidence of that, to say why these circumstances are exceptional, we need to connect the dots back to the malpractice action. And the malpractice action established that, and of course, the record can be read in two places. First, in the district court, it's without dispute that Judge Caputo found that trial counsel, by dilatory tactics or whatever, had not presented advice of counsel of defense. He allowed it in on a very narrow issue. He allowed one lawyer to testify that there was no fraud of the patent office, that Mr. Miller and Mr. Silver had presented to the patent office all prior art. And that was presented. But the facts that Mr. Miller and Mr. Silver, before they had sent out letters to the marketplace asserting that Noble had infringed on their product, that these letters were drafted by lawyers, that they were responsible businessmen that went out and asked their lawyers' opinion, got Rule 11 reviews before filing suit, that asserted there were three different law firms that gave those opinions. And yet, none of that evidence came in to the trial before Judge Caputo. The jury verdict returned these punitive damages awards. And so, what's exceptional, we think, about a request is, first of all, there's no intent, there's no effect of undermining any jury verdict. Here, the jury verdict, we're only challenging to vacate a portion of it. Years after, both has been satisfied, as well as other circumstances show why, in our opinion, it would no longer be equitable to have that order there. So, we seek only a portion. And it's only after the subsequent litigation has demonstrated that both Miller and Silver have, frankly, have paid dearly. You're not arguing that based on the record before the jury, the jury somehow went awry? I would, first of all, submit to your honor that that argument, that ship has sailed. They did appeal, Mr. Miller, Mr. Silver, and our judges did appeal the judgment. But in the bankruptcy court and before this court, there was a global settlement with Noble that resolved all those matters. So, as a result, I am not here, nor, frankly, could I be here, to suggest that the jury verdict was somehow improper or that even Judge Caputo's decisions about, you know, excluding the advice of counsel was improper. That's not the point. What we're suggesting here is something very narrow, that Judge Caputo abused his motion to vacate only that portion of the judgment that imposed punitive damages on Mr. Miller and Mr. Silver. Punitive damages, by the very definition, are punishment. And they have an impact. And this has been an enormous... But he did so on the record that was presented. Absolutely, your honor. I mean, I think Judge Laurie is right, that parties traditionally are bound by the actions of their lawyers. And in this case, there were serious consequences. Yes, your honor. I certainly don't speak with... And you know, you obviously justified in pursuing the malpractice claim, which resulted in some vindication. But that doesn't necessarily mean that Rule 60 would permit a vacatur of this jury's finding. Our position, your honor, is that Rule 60, Section, Subsection 5, permits exactly that in exceptional circumstances. And again, I don't have a case on all fours because there aren't cases like this. It is one of those things where we have to look at the language of what happened in Evans and the district court did in other places to find whether or not the circumstances are so egregious or so exceptional that they warrant focusing on that language in Section B-5 that says, applying it would no longer be equitable. That's what we're saying here. We're saying that the court may relieve the party of this judgment when it's no longer equitable. Where exactly, I want to make sure I understand, where exactly do you say the malpractice lay in this case? The malpractice lay, and again, I can refer you to the federal district court where it was Argenta, Miller & Silver versus the Rocky Devke firm. And the malpractice occurred here with trial counsel for Argenta, Silver, and Miller waived, negligently waived, the advice of counsel defense for Mr. Miller and Mr. Silver. Argenta filed- With respect to- With respect with project disparagement and unfair competition. The original, they're counter defense. What happened is Argenta filed suit for product infringement against Noble Pharmaceutical. This is silver-infused bandages. It's antimicrobial. It's a great product. I thought there was an effort. I thought an effort was made to, there was a motion to eliminate Greggs. Yes, and we- And I thought that it looked like counsel was trying to get evidence in of- Subsequent, the original trial counsel were terminated. And successor trial counsel tried to resurrect what had not happened before. During trial. Right before trial. And there was a motion to eliminate to say, that advice of counsel defense is gone. That's gone because prior counsel had waived it. And what Judge Caputo did was he said, I will allow limited testimony on the question of whether or not Mr. Miller and Mr. Silver had withheld, improperly withheld prior art from the patent office. But no other advice of counsel defense was allowed in. And the case was tried, resulting, and there was no finding about the fraud of the patent office that was rejected. But Mr. Miller and Mr. Silver were standing there with million dollar, million point two dollar punitive damage awards against them because they were unable to establish that everything they did, from letters that were sent to the marketplace to filing the lawsuit, were done at the benefit of several different law firms giving that advice. And so the malpractice question is where, quite appropriately, we believe, I was the counsel that prosecuted that case, that we established, that we went, you know, tried to seek some recovery, vindication for that. But we're back here. So what you're saying is the malpractice occurred pre-trial. Pre-trial. During the discovery phase. There was a finding by Judge Caputo that the advice of counsel defense wasn't properly disclosed, wasn't, documents weren't properly turned over, and therefore would not be available trial. Other than the limited circumstances I've described. So the case was settled, though, after the verdict and after the bankruptcy? Subsequently, exactly right, Your Honor. Subsequently to the jury verdict, there was an appeal taken here and there was a bankruptcy in the North District of Illinois. In the fall of 2012, there was a kind of a global settlement with Noble, one of the reasons why you see no one here today. Global settlement with Noble that dismissed the appeal, terminated, closed the bankruptcy case. The malpractice case, of course, was with different parties, so that continued for another year. And that was resolved, and then we're back here. But the punitive, and did the settlement involve? The settlement was global. So, in other words, the punitive damages, the entire, in other words, the jury award was $3.25 million, a million dollars in compensable damages against Argentum. And then one million against Mr. Silver, excuse me, one million against Mr. Miller, 1.25 million against Mr. Silver. So it was a 3.2. There was a global settlement in the bankruptcy court of two plus million dollars. So far and above, more than the compensation, the compensatory damages. Everything was resolved then. The malpractice case was prosecuted. And then having successfully prosecuted that, Mr. Miller and Mr. Silver, who, frankly- Were they fully compensated? Pardon me? Were they out of LA? Never fully compensated, particularly when it's a punitive damage award, Your Honor. They've lost their company. And that's, again, the support for that is the bankruptcy court, which has a reorganization plan where they're not in control. And the malpractice case is always an imperfect resolution. The point is, Your Honor, is that, and also, there's something different. We're not seeking to vacate the compensation award. And I think the distinction matters because, you know, the jury is talking about compensation. Punitive damages are something else. There's an equitable element to punitive damages. It's to punish. We think there are exceptional circumstances in how that punishment was imposed, for what reasons, and why now, years later, it's appropriate for Mr. Miller and Mr. Silver, who are out in the marketplace, you know, pursuing their lives, would seek appropriately, under the principles of equity of Rule 60b-5, to have that punitive damage award vacated. But they wouldn't get any money back. No. No money. This is, it's not really about money. I mean, I know that's, when people say that, that the, but the reality is, it's not about money. It's about their honor. It's about their reputation. It's about their ability in the marketplace to not face the punitive damage award that was entered here. And we think Rule 60b-5 provides exactly that vehicle. Thank you. Thank you for your time. Mr. Tornan will take the case under review. All rise. The Honorable Court is adjourned until tomorrow morning. It's at a clock a.m. Thank you, sir.